UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CRIMINAL ACTION NO. 1:03CR-43-M

UNITED STATES OF AMERICA                                        PLAINTIFF

VS.

RICHARD ALLEN WASHAM                                        DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on motions by the Defendant, Richard Allen Washam, *pro se*, for a new trial [DN 189, DN 262]. The Government filed a response [DN 276, DN 278]. The Defendant did not file a reply. Fully briefed, this matter is ripe for decision. For the reasons set forth below, the motion by the Defendant for a new trial is denied.

## I. BACKGROUND

In October of 2003, a federal grand jury returned an Indictment against Defendant Washam charging him with the commission of two armed bank robberies which occurred on March 26 and April 24, 2003, at the U.S. Bank located at 1970 Cave Mill Road, Bowling Green, Kentucky. Counts 1, 2, and 3 charge Defendant with bank robbery, armed bank robbery, and using and carrying a firearm during the robbery of the U.S. Bank on March 26, 2003 in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c). Counts 5, 6, and 7 charge Defendant with bank robbery, armed bank robbery, and using and carrying a firearm during the robbery of the U.S. Bank on April 24, 2003, in violation of 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c). Counts 4 and 8 charge Defendant with being a felon in

possession of a firearm at the time of both bank robberies in violation of 18 U.S.C. § 924(c). The case proceeded to trial.   The charges for bank robbery (Counts 1 and 5) were dismissed as lesser included offenses of armed bank robbery (Counts 2 and 6).  On August 3, 2006, a jury returned a verdict of guilty as to Counts 2, 3, 6, and 7.  The United States dismissed Counts 4 and 8 after the verdict.  The Defendant has now filed a motion for new trial and a supplemental *pro se* motion for new trial [DN 189, DN 262].

## II.  STANDARD

The Defendant requests a new trial pursuant to Federal Rules of Criminal Procedure 33.  Rule 33 provides that "[u]pon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The decision of whether to grant a new trial is committed to the "sound discretion of the trial judge." U.S. v. Barlow, 693 F.2d 954, 966 (6th Cir.1982); United States v. Pierce, 62 F.3d 818, 823 (6th Cir.1995).  When presented with a Rule 33 motion, the district court may weigh the evidence and assess the credibility of the witnesses; "[i]t has often been said that he/she sits as a thirteenth juror." United States v. Solorio, 337 F.3d 580, 589 n.6 (6th Cir. 2003) (internal citations omitted).  However, "new trial motions are disfavored and should be granted with caution." U.S. v. Willis, 257 F.3d 636, 645 (6th Cir. 2001) (citation omitted). The Defendant bears the burden of proving that a new trial should be granted.  United States v. Davis, 15 F.3d 526, 531 (6th Cir.1994); U.S. v. Turner, 995 F.2d 1357, 1364 (6th Cir.1993).  Based on this standard, the Court shall address Defendant's numerous arguments in support of his motion for new trial.

2

## III. DISCUSSION

### A.  404(b) Evidence

On June 3, 2003, Washam robbed a PNC Bank in Florence, Kentucky.  He was apprehended shortly after the armed robbery.  Stolen money and a gun were recovered from his vehicle.  FBI Agent Doug Warner testified that in a post-arrest interview Washam stated that he had found the firearm recovered in a barn near his home in Monticello, and that he had robbed the bank in order to buy cocaine to satisfy his addiction.  Washam pleaded guilty in the Eastern District of Kentucky to armed bank robbery and to using a firearm during and in relation to a crime of violence related to the Florence bank robbery.  On May 10, 2004, Washam was sentenced to 117 months imprisonment.

On August 9, 2004, the United States filed notice of intent to use evidence of the Florence bank robbery in this case pursuant to Fed. R. Evid. 404(b).  The United States argued that the evidence was admissible to prove identity through a distinctive *modus operandi*.  On September 15, 2004, the United States filed another Rule 404(b) notice to use evidence of Washam's statement about his cocaine addiction to prove motive.  On July 28, 2006, the United States filed a supplemental trial memorandum notifying the Court and defense counsel that the United States had learned during the course of trial preparation that the defendant "admitted to investigating officers, after his arrest for the Florence robbery on June 3, 2003, that he had possessed the Phoenix Arms HP-22 semiautomatic pistol seized from his vehicle when he was arrested, and that he found it some time ago."  (DN 130, Supplemental Trial Memorandum at 2.)  Washam argues that it was improper for the Court

3

to admit evidence of the June 2003 Florence PNC Bank robbery.

Rule 404(b) prohibits evidence of other acts to be introduced to prove action in conformity therewith at a later time.  Such evidence, however, may be admissible for other purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).  Rule 404(b) "'is actually a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified.'" United States v. Vance, 871 F.2d 572, 575 (6th Cir. 1989) (quoting United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985)).

The Sixth Circuit allows evidence of other crimes, wrongs, or acts of a defendant to be admitted (1) if there is sufficient evidence that the other act in question actually occurred; (2) if the evidence of the other act is "'probative of a material issue other than character;'" and (3) if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice under Fed. R. Evid. 403.[1]  Huddleston v. United States, 485 U.S. 681 (1988); United States v. Haywood, 280 F.3d 715, 720 (6th Cir. 2002); United States v. Merriweather, 78 F.3d 1070 (6th Cir. 1996); United States v. Johnson, 27 F.3d 1186, 1191 (6th Cir. 1994).  "Evidence of other acts is probative of a material issue other than character

---

[1] Rule 403 authorizes exclusion of otherwise admissible Rule 404(b) evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.  The Sixth Circuit has outlined factors to consider in making this determination: "(1) whether other acts evidence is unduly prejudicial; (2) if other means of proof are available; (3) when the other acts occurred; and (4) whether the district court gave a limiting instruction." United States v. Stevens, 303 F.3d 711, 717 n. 3 (6th Cir. 2002)(citing United States v. Brown, 147 F.3d 477, 483 (6th Cir. 1998)).

if (1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." Haywood, 280 F.3d at 720.

### 1. Florence Bank Robbery

Washam argues that it was improper to admit evidence of the subsequent Florence PNC Bank robbery pursuant to Rule 404(b) and that the prejudicial impact significantly outweighed its limited probative value.  Washam argues that because the robberies occurred several months apart and several hundred miles away, the crimes are too remote to permit admission of the evidence.  Washam further argues that the robberies in question were not sufficiently unique to constitute a signature robbery.

Initially, it is clear that the first inquiry – whether there is sufficient evidence that the other act in question actually occurred –  is satisfied.  The PNC Bank in Florence, Kentucky was robbed by Washam.  The question therefore becomes whether this Court admitted evidence of the subsequent Florence bank robbery for a proper purpose.  See United States v. Perry, 438 F.3d 642, 648 (6th Cir. 2006).  Clearly, identity was an issue in the case. "[W]hen the issue is one related solely to identity, [the Sixth Circuit] has overwhelmingly approved of the admission of 'other acts' evidence."  Id.   The Sixth Circuit has recognized that "two crimes of sufficient distinctive similarity can create a pattern or modus operandi." Id.  It is not necessary that the crimes be identical in every detail.  United States v. Hamilton, 684 F.2d 380, 385 (6th Cir. 1982).

In the Florence bank robbery, as in those committed in Bowling Green, the robber

held the firearm in his left hand and grabbed the money with his right without using any bag or sack to hold the money.  In each robbery, the bank robber approached the teller in the same manner, smiling and greeting her in a friendly manner.  He made no attempt to go over the counter or get into the vault.  In every robbery, the robber acted alone, was dressed in a dark blue or black nylon windbreaker with a hood, and did not use gloves.  In both the Florence robbery and the April 24th Bowling Green robbery, the bank robber also parked his getaway vehicle in the bank parking lot.  Based upon these facts, the Court finds that the Florence bank robbery was sufficiently similar to the charged robberies to be probative of identity.  See United States v. Mack, 258 F.3d 548, 554 (6th Cir. 2001).

"The inquiry then turns to determining whether the [Court] properly balanced the prejudicial impact and probative value pursuant to Fed R. Evid. 403."  Perry, 438 F.3d at 648.  The Court finds that the evidence of Washam's armed robbery of the PNC Bank in Florence was not unduly prejudicial to render it inadmissible.  Additionally, following the admission of this evidence, the Court gave the jury an appropriate limiting instruction, which was repeated several times throughout the trial.  Id. at 649.

For these reasons, the Court concludes that the introduction of the subsequent Florence bank robbery on the issue of Washam's identity was properly introduced under Rule 404(b).

## 2. Limiting Instruction

Washam argues that the Court erred when it failed to instruct the jury panel in the opening charge as to the limited use of Rule 404(b).  The Court rejects this argument.  As

6

noted above, following the admission of this evidence, the Court gave the jury an appropriate limiting instruction which was repeated several times throughout the trial. (Trial Transcript, Volume II at 198, 205, 232.)  The Sixth Circuit has instructed that after admitting evidence under Rule 404(b), the district court

> must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b).

United States v. Johnson, 27 F.3d 1186, 1194 (6th Cir. 1994).  Contrary to Washam's argument, there is no requirement that the Court give the limiting instruction during the opening charge to the jury panel.

**B. Introduction of the Firearm**

**1.  Fair Notice of the Introduction of the Firearm**

Washam argues that the United States went beyond the declared purpose of the introduction of the Florence bank robbery by arguing that the gun recovered from the Florence bank robbery was actually used in the Bowling Green bank robberies.  Washam argues that his counsel was unaware that the United States intended to claim that the firearm recovered from Washam in connection with the Florence bank robbery was the gun used in the Bowling Green bank robberies.  Further, Washam complains that the firearm was never produced to counsel despite repeated discovery requests in violation of Fed. R. Crim. P. 16.

The United States gave notice in August of 2003 of its general intent to use evidence of the June 3, 2003, robbery at trial.  The gun in question had been seized from Washam's

possession when he was arrested on June 3 after he robbed the PNC Bank in Florence. The Government's trial memorandum filed on July 24, 2006, specifically states that one of the exhibits to be offered into evidence at trial is the firearm used by the Defendant on June 3, 2003, during the Florence bank robbery. The firearm was admitted into evidence without objection. (Trial Transcript, Vol. 1 at 6; Vol. II at 216.) After a review of the record, the Court concludes that the Defendant had fair notice of the Government's intent to introduce the gun in question.

### 2. Description of the Gun

Washam argues that the United States failed to turn over exculpatory evidence regarding Julia Smith's description of the gun used in the April 24, 2003 robbery. Washam claims that Ms. Smith was "a complete moron under the Governments attorneys direct control, which causes her to commit perjury while testifying at trial."

After the robbery in question, Julia Smith made a statement to Special Agent Dick Glenn describing the gun as dark gray to black in color and appearing to have a texture. Additionally, Smith stated that the gun looked like it could have been plastic, but she couldn't say for sure. (Smith's FBI 302.) At trial, Ms. Smith testified that Government Exhibit 10 (the gun seized from Defendant after the Florence bank robbery) looked "a lot like the one [the bank robber] pointed at me." (Trial Transcript, Vol. II at 113.) Ms. Smith further testified that the gun "did not look plastic. It looked metal. It looked real to me, and I took it to be real." (Id.)

The record reflects that the United States provided all Jencks Act material to defense

8

counsel at the beginning of trial.  Smith's FBI 302 statement had inadvertently been placed in Agent Cundiff's file.  At trial, defense counsel sought to recall Julia Smith to question her about her previous description of the gun.  However, Ms. Smith had been excused and had already traveled to Illinois.  The Court agreed with defense counsel that the information regarding Ms. Smith's previous description of the firearm in question was important information for the defense.  (Trial Transcript, Vol. III at 105.)  Defense counsel and the government agreed that the Defendant would call FBI Special Agent Dick Glenn to question him about Ms. Smith's FBI 302 he prepared and the statements made by Ms. Smith.  (Id.)  The record reflects that the jury was made aware of Ms. Smith's previous statements and could weigh her trial testimony with the statements made at the time of the robbery. (Id. at 235-238.)   Given these facts, the Court concludes no error occurred.[2]

### C. Constitutional Issue – Fifth Amendment

Defendant argues that he was entitled to a mistrial when the Assistant United States Attorney asked the Judge to direct the Defendant to show his teeth to a witness.  During the trial, Diane Linstruth, a teller from the Florence bank robbery, testified about the description of the robber in that case.  When asked if she saw the same person in the courtroom, Ms. Linstruth said she would have to see him smiling because the person who robbed her had a

---

[2] Washam also argues that the introduction of the weapon at trial was plain error because the weapon seized from him after the Florence bank robbery was actually reported stolen in May of 2003, well after the Bowling Green bank robberies occurred. The Court has addressed this issue in another Memorandum Opinion and Order entered this date.

wonderful smile and the most beautiful teeth.  The AUSA in the presence of the jury then "ask[ed] the Court's leave to ask Mr. Washam to stand up and smile." (Trial Transcript, Vol. II at 183.)  Washam refused; defense counsel objected and moved for a mistrial. (Id. at 183-193.)  After considering arguments by counsel, the Court sustained the objection, denied the motion for mistrial, and instructed the jury not to consider the Defendant's refusal to smile for the witness as evidence of guilt.  Specifically, the Court instructed the jury:

> Ladies and gentlemen, I have determined that the line of questioning of this last witness as to whether or not she could identify the defendant as the person who was in her bank in Florence is not relevant to this proceeding.
> The request, therefore, to have him stand and remove his glasses and smile was an improper request and that his refusal to do so was proper. Therefore, you are not to consider his refusal against him in any manner whatsoever.  Don't draw any negative inference from that as far as his guilt is concerned in this case.  Do you understand?

(Trial Transcript, Vol. II at 193-194).  Washam argues that the government's request violates the Fifth Amendment.  Washam further argues that compulsion of such a non-testimonial act is not properly performed before the jury without prior notice to counsel.  Washam states that since he had pleaded guilty to the PNC Florence bank robbery, there was no need for Washam to stand and smile in order for the teller to identify him.

"It has long been held that the compelled display of identifiable physical characteristics infringes no interest protected by the [Fifth Amendment] privilege against compulsory self-incrimination." United States v. Dionisio, 410 U.S. 1, 5-6 (1973).  See, e.g.,United States v. Williams, 704 F.2d 315, 318-319 (6th Cir. 1983)(defendant compelled to produce a live voice exemplars); United States v. Murray, 523 F.2d 489, 492 (8th Cir.

1975)(defendant compelled to wear wig before jury); <u>United States v. Bay</u>, 762 F.2d 1314,

1315-16 (9th Cir.1984) (defendants showing of hands to the jury did not violate Fifth

Amendment).  <u>See also</u> <u>Sholler v. Commonwealth of Kentucky</u>, 969 S.W.2d 706, 711 (Ky.

1998)(defendant compelled to show teeth to jury).  In <u>Schmerber v. California</u>, 384 U.S. 757

(1966), the Supreme Court noted that:

> [B]oth federal and state courts have usually held that [the Fifth Amendment
> privilege] offers no protection against compulsion to submit to fingerprinting,
> photographing, or measurements, to write or speak for identification, to appear
> in court, to stand, to assume a stance, to walk, or to make a particular gesture.
> The distinction which has emerged, often expressed in different ways, is that
> the privilege is a bar against compelling 'communications' or 'testimony,' but
> that compulsion which makes a suspect or accused the source of 'real or
> physical evidence' does not violate it.

<u>Id</u>. at 764 (citation omitted).  Therefore, the request by the United States to have the

Defendant  smile and remove his glasses is not protected by the Fifth Amendment.

Notwithstanding, because the identity of the Florence bank robber was not at issue,

the in-court identification of Washam was not relevant.  If the Defendant suffered any unfair

prejudice because of the request, it was cured by the Court's instruction.  The Supreme Court

has instructed that courts should "presume that a jury will follow an instruction to disregard

inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming

probability' that the jury will be unable to follow the court's instructions . . . and a strong

likelihood that the effect of the evidence would be 'devastating' to the defendant." <u>Greer v.</u>

<u>Miller</u>, 483 U.S. 756, 767 n. 8 (1987). Washam has failed to demonstrate anything

resembling an "overwhelming probability" that the jury could not follow the Court's

instruction.    Furthermore,  Defendant's  refusal  to  comply  with  the  request  was  not

"devastating" to the Defendant because the issue of the identity of the bank robber in the

Florence bank robbery was undisputed.  The Court finds that the curative instruction given

to the jury is sufficient, and no new trial is warranted under these circumstances.

### D.  Pretrial Identification

Defendant argues that the Court erred in permitting the testimony at trial regarding

the pre-trial identification and the in-court identification of Defendant.  "A conviction based

on  identification  testimony  that  follows  a  pretrial  identification  violates  the  defendant's

constitutional  right  to  due  process  whenever  the  pretrial  identification  procedure  is  so

'impermissibly  suggestive  as  to  give  rise  to  a  very  substantial  likelihood  of  irreparable

misidentification.'"  Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994)(quoting

Thigpen v. Cory, 804 F.2d 893, 895 (6th Cir. 1986)).  The Sixth Circuit uses a two-step

analysis to assess the validity of a pretrial identification.  First, the Court "considers whether

the procedure was unduly suggestive."  Ledbetter, 35 F.3d at 1070-71.  The defendant bears

the burden of proving this element.  Id. at 1071.  See also United States v. Johnson, 282 F.

Supp.2d 808 (W.D. Tenn. 2003).  Second, "[i]f the court does find that the procedure was

unduly suggestive, it next evaluates the totality of the circumstances to determine whether

the  identification  was  nevertheless  reliable."  Ledbetter, 35 F.3d at 1071.  The Court

considers five factors to assess reliability:

> (1) the opportunity of the witness to view the criminal at the time of the crime;
> (2) the witness's degree of attention at the time of observation; (3) the
> accuracy of the witness's prior description of the criminal; (4) the level of

certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation.

Id. at 1071 (citing Neil v. Biggers, 409 U.S. 188 (1972) and Manson v. Brathwaite, 432 U.S. 98, 112 (1977)). "If the defendant fails to show that the procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, admission of the identification testimony does not violate the defendant's right to due process." United States v. Meyer, 359 F.3d 820, 824 (6th Cir.), cert. denied, 543 U.S. 906 (2004).

During the trial, one witness to the March 26, 2003, robbery and two witnesses to the April 24, 2003, robbery testified that they had identified Washam from a photographic array shown to them by the FBI in June of 2003. Prior to trial, Washam filed a motion to suppress the photo identification and any subsequent in-court identification. Defendant argued that his right to due process of law was violated because the pretrial identification procedure used was impermissibly suggestive. Defendant also claimed that any subsequent in-court identification would likewise be tainted by the pretrial identification.

By Memorandum Opinion and Order entered December 1, 2004, the Court found that the identification procedure was unduly suggestive and ordered a further hearing in this matter. On December 20, 2004, the Court conducted a second evidentiary hearing to examine the Neil v. Biggers factors. 409 U.S. 188. After hearing the testimony of the identification witnesses and weighing the Neil v. Biggers factors, the Court concluded that the witnesses identification of Washam was reliable and permitted both the pretrial

13

identification and in-court identification by the witnesses.

Defendant now seeks a new trial arguing that the unduly suggestive photo array irreparably prejudiced the identification process so as to make it unreliable under the totality of the circumstances.  Defendant argues that in light of the trial testimony of his eyewitness expert, Dr. Solomon Fulero, the Court should grant a new trial and exclude both the witnesses' in-court identification and any testimony about their pretrial identification of Defendant.  After reviewing the testimony of the witnesses in light of the testimony of Dr. Fulero and for the reasons set forth by the Court at the December 20, 2004 hearing, the Court concludes that under the totality of the circumstances the identification was reliable. [DN 99 at 60-61].

**E.  Jury Selection Process**

Washam argues that he is entitled to a new trial because there was no African Americans on the prospective venire panel.  Washam claims that the jury selection procedures implicate Sixth Amendment, equal protection, and due process principles.  At trial, defense counsel sought a change of venue and selection of a new panel due to the lack of minorities on the petit jury panel. (Trial Transcript, Vol. 1 at 32-37, 125-127.)  The record reflects that an African American woman had been called to be a juror in this matter.  However, prior to trial, she notified the Court that because of family problems she was unable to appear and the Magistrate Judge excused her.  After hearing the parties' arguments, the Court denied Defendant's motion for a change of venue and selection of a new panel.

### 1. Sixth Amendment – Fair Cross Section Violation

The Sixth Amendment requires that the jury venire from which a jury is selected represent a "fair cross-section" of the community.  Taylor v. Louisiana, 419 U.S. 522, 528 (1975).  However, "'[d]efendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.'"  United States v. Hill, 146 F.3d 337, 343 (6th Cir.1998) (quoting Taylor, 419 U.S. at 538).

> A prima facie case of a fair cross section violation requires the defendant to show: 1) that the group alleged to be excluded is a "distinctive" group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Id. (citing Duren v. Missouri, 439 U.S. 357, 364 (1979)).

Defendant argues that the underrepresentation of African Americans is systematic in the Bowling Green Division given that no African Americans appeared on the prospective venire panel and the only prospective African American was excused prior to the selection process.  The Court disagrees.  Washam has failed to show systematic exclusion, purposeful discrimination or any violation of law in the selection process.  The mere fact that no African-American jurors were on his panel fails to demonstrate that the jury selection process systematically excludes African-Americans.  Id.  Having failed to demonstrate systematic

exclusion, Washam has not satisfied the third prong of his burden.[3]

### 2.  Equal Protection and Due Process

Washam also challenges the jury selection method on equal protection grounds.  "A defendant challenging a venire on equal protection grounds bears the burden of showing that the venire was selected in an intentionally discriminatory manner."  United States v. Allen, 160 F.3d 1096, 1104 (6th Cir. 1998).  There is no evidence of intentional discrimination on the part of any official involved with the jury selection system used in the Bowling Green Division of the Western District of Kentucky. (See Trial Transcript, Vol. I at 37.)

Washam likewise contends that the Bowling Green Division's jury selection process violates his Due Process Clause rights as protected in the Fifth Amendment.  See Peters v. Kiff, 407 U.S. 493 (1972).  "Arguably . . . challenges to alleged systematic exclusion in a jury-selection process, whether state or federal, are now properly brought under the more precise doctrinal framework of the [S]ixth amendment."  United States v. Carmichael, 467 F. Supp. 2d 1282, 1315 (M.D. Ala. 2006). Thus, for the same reasons that Washam's Sixth Amendment claim failed, this claim also fails.

### F.  Defendant's Presence at the Suppression Hearing

On December 20, 2004, a second evidentiary hearing was conducted on the Defendant's motion to suppress pretrial identification testimony from the bank tellers based

---

[3]The Court finds that Washam has satisfied the first prong of the Duren test.  However, from a review of the arguments and record, it would appear to the Court that Washam has also failed to satisfy the second prong.  See e.g., United States v. Allen, 160 F.3d at 1103-04.

16

upon a photographic array prepared by the FBI.  Prior to the first evidentiary hearing, Defendant filed a motion to permit him to remain outside the courtroom during the suppression hearing "**if** bank employees will be present to testify" [DN 55] which was granted by the Court. [DN 75].  At the December 20, 2004, evidentiary hearing, defense counsel confirmed that there was a waiver of Mr. Washam's right to be present during the proceeding.  Specifically, defense counsel explained: "I filed a motion asking that he be excluded from the hearing so that there wouldn't be any possibility of some prejudicial in-court identification, and the Court sustained my motion." (December 20, 2004, Evidentiary Hearing Transcript at 4.)  Both parties agreed that there was not a need to have Mr. Washam brought into Court and acknowledge his waiver on the record. Id.  Washam now argues that a new trial is warranted because he did not effectively waive his right to be present at the suppression hearing.  Washam also contends that prior to the hearing he told defense counsel he wanted to be present.

The Supreme Court has concluded that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745 (1987).  A defendant can waive his right to be present.  "Of course the waiver of this right, as with other constitutional rights, must be knowing and voluntary." United States v. Riddle, 249 F.3d 529, 534 (6th Cir. 2001)(citing  Johnson v. Zerbst, 304 U.S. 458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege.")).

17

The Court credits the statement of defense counsel, Joseph Kirwan, that Mr. Washam had approved of the motion requesting not to be present at the suppression hearing. Additionally, Mr. Kirwan represents that Mr. Washam never asked him before the hearing to allow him to be present during the evidentiary hearing.  (Kirwan Aff. at ¶¶ 7, 8.)   The Court concludes that Washam knowingly and voluntarily waived his right to be present at the evidentiary hearing.  "[T]he Constitution does not require a colloquy on the record to establish a knowing waiver of the right to be present."  Riddle, 249 F.3d at 534. See also United States v. Gallo, 763 F.2d 1504, 1529 (6th Cir.1985)(the Sixth Circuit held that a defendant had effectively waived his right to be present when his defense counsel relayed the hospitalized defendant's waiver of presence to the court).

### G.  Alleged False Testimony

Washam claims that government witnesses testified falsely at the behest of the government and, as a result, a new trial is warranted.  "[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103 (1976).  "To prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3)[the] prosecution knew they were false.'" United States v. Pierce, 62 F.3d 818, 834 (6th Cir.1995) (quoting United States v. Farley, 2 F.3d 645, 655 (6th Cir.1993)). The burden is on Washam to show that the testimony was false.  United States v. Griley, 814 F.2d 967, 971 (4th Cir.1987).

18

Washam argues that Julia Smith's testimony regarding the description of the gun was false. As evidence, Washam cites Smith's trial testimony, FBI 302, police report, and FBI Special Agent Glenn's trial testimony. The evidence cited by Washam was presented at trial as impeachment evidence. It does not clearly establish that her testimony was false. "'[M]ere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.'" United States v. Benton, 64 Fed. App'x 914, 920 (6th Cir. 2003)(quoting United States v. Scarborough, 43 F.3d 1021, 1026 (6th Cir. 1994)). Washam cannot prove that the government made knowing use of false testimony, and as a result, failed to meet his burden. Likewise, the Court finds that Washam failed to show that the government made knowing use of false testimony with respect to Carolyn Hughes's description of the gun and Victor Osorio's identification of Washam.

Washam also argues that FBI Special Agent Doug Warner presented false testimony at trial. Agent Warner testified that Washam confessed to arresting officers that he robbed the Florence bank because he was addicted to cocaine and needed money to buy the drugs. Washam contends that the United States has failed to offer any factual proof to support the Government's contention that the Defendant was addicted to cocaine. The Court credits the testimony of Agent Warner and concludes that the introduction of this evidence was proper.

Additionally, Washam argues that FBI Special Agent Ed Cundiff presented perjured testimony before the grand jury. For the reasons set forth in the Court's April 17, 2007, Memorandum Opinion and Order, the Court concludes that Washam cannot prove that Agent Cundiff committed perjury or that the government made knowing use of false testimony [DN

19

268].

## H. Exculpatory Evidence

Washam claims that the United States withheld exculpatory evidence by not providing the Defendant with "still photographs" from a videotape of the March 26 bank robbery, by withholding a Crimestoppers Video until the trial testimony of John Preston, and by not providing the original photograph of Defendant used by FBI Agent Doug Warner in preparing the photo array.

First, the still photographs in question were introduced without objection by defense counsel. Defense counsel had been provided with a copy of the videotape of the March 26 and April 24 robbery from which these photographs were made. The United States did not withhold exculpatory evidence.

Second, the only part of the Crimestoppers video that was played was the segment that actually showed the bank robber. Pictures of these segments had already been admitted into evidence and the Court did not permit the audio to be played. Additionally, defense counsel was made aware of the existence of the Crimestoppers videotape the day before it was introduced into the record. Accordingly, the Court finds that the Government did not withhold exculpatory evidence.

Third, a black and white copy of the photograph of Defendant taken at the Boone County Jail and utilized by Agent Doug Warner in preparing the photo array was provided to defense counsel. However, the color photograph was brought by Sergeant Tim Jones from the Boone County Jail on the day he testified at trial. The Court permitted the introduction

20

of the photograph because it confirmed where Agent Cundiff received the photograph.  (Trial Transcript, Vol. II at 208-209.)  A copy of the photograph had previously been provided to defense counsel.  <u>Id.</u>  The Court finds no error occurred in the introduction of the photograph in question.

## I.  First Amendment Rights

Washam alleges that the Court plainly erred and abused its discretion during the last day of trial by not allowing the Defendant or his counsel to read a statement into the record outside the presence of the jury.  Washam claims that the Court violated his freedom of speech under the First Amendment.

The record reflects that Washam requested counsel to read a statement into the record for the purpose of preserving certain issues or objections for appeal.  (Trial Transcript, Vol. IV at 9.)  The Court denied Washam's request, but instructed defense counsel that if there was something contained in the statement that he thought "as his attorney need[ed] to be brought up, then [he] could do that." (<u>Id.</u> at 10.) At defense counsel's request, the Court permitted him an opportunity to review the statement to see if any issues needed to be brought to the attention of the Court.  In fact, at the close of Defendant's case, defense counsel listed numerous alleged errors to support his motion for judgment of acquittal, including Mr. Washam's concerns about the effective representation of defense counsel. (<u>Id.</u> at 17-27.)

Defendant has presented no authority for his argument that a denial of a defendant, represented by counsel, to make a statement outside the presence of the jury regarding

alleged errors at trial is a violation of a defendant's First Amendment rights.

**J.  Prosecutorial Misconduct**

Washam alleges prosecutorial misconduct at every stage of the proceedings.  The Sixth Circuit employs a two-prong test when reviewing a claim of prosecutorial misconduct: "First, [the court] determine[s] whether the comments were improper. . . . If the comments were improper, [the Court] then determine[s] whether they were flagrant, requiring reversal." United States v. Merkosky, 135 Fed. App'x 828, 834 (6th Cir. 2005)(United States v. Galloway, 316 F.3d 624, 632 (6th Cir.2003)).   In determining whether the remarks were flagrant, the Court considers "the prejudicial effect to the defendant; whether the remarks were isolated or pervasive; whether the remarks were deliberate or accidental; and the strength of the evidence against the accused." Id. (citing Galloway, 316 F.3d at 632).

First, Washam claims that the Assistant United States Attorney suborned perjury by a Special Agent Ed Cundiff before the grand jury and failed to present exculpatory evidence to the grand jury.  Washam raised these arguments in a motion to dismiss the Indictment with prejudice due to perjured grand jury testimony [DN 203].  For the reasons set forth in the Court's April 18, 2007, Memorandum Opinion and Order [DN 268], the Court finds that no prosecutorial misconduct occurred during the presentation of the case to the grand jury with respect to this testimony.

Second, Washam argues that the AUSA withheld exculpatory evidence at trial and induced witnesses to commit perjury.  These claims have been addressed in previous sections of this Opinion and need not be revisited.

Third, Washam argues that prosecutorial misconduct occurred because AUSA Fentress and Special Agent Cundiff met with witnesses pretrial. It is permissible for the government to conduct pretrial witness preparation. Washam's argument with respect to this issue fails.

Fourth, Washam argues that the Government engaged in misconduct by placing the gun in the hands of the jury. Contrary to Washam's argument, the gun was introduced without objection and properly published to the jury.

Fifth, Washam also claims that the AUSA engaged in misconduct during his closing argument by stating that "I could go on and on too, and I always get in trouble when I get a little emotional on these things and I usually don't do that, and I'm trying not do that here and I'm going to stop before I say something that gets me in trouble." (Trial Transcript, Vol. IV at 103.) Washam argues that the statement constituted an improper appeal to the emotions of the jury. Because defense counsel did not object to the statement, the Court reviews this claim for plain error. United States v. Carroll, 26 F.3d 1380, 1383 (6th Cir. 1994). Upon review of these statements, the Court concludes that no error occurred. The prosecutor did not make improper comments during his closing argument.

Sixth, Washam argues that the Government engaged in misconduct during its opening argument by interjecting references to the Florence bank robbery without proper limiting instructions by the Court. Additionally, Washam claims that the Court permitted the AUSA to imply that it had special knowledge of facts not in front of this jury. Upon review, the Court concludes that no error occurred. The prosecutor did not make improper comments

23

during opening argument.  In fact, with respect to the Florence bank robbery, the prosecutor expressed reasonable statements based upon the evidence to be presented.  Additionally, the Court instructed the jury that the lawyers' arguments were not evidence.  These safeguards generally cure any improprieties in arguments by counsel.   United States v. Emuegbunam, 268 F.3d 377, 406 (6th Cir. 2001).

For these reasons, the Court finds that Washam's claims of prosecutorial misconduct fails.

### K.  Juror Bias

Washam argues that Juror 37 should have been excused because the juror and his spouse knew a government witness, Carol Jones; the juror's spouse spoke to the witness before the trial; and the spouse wanted to watch the trial.   These matters were brought to the attention of the Court before trial.  The Court spoke to Juror 37 inquiring as to whether he could be impartial even though his spouse knew the witness and instructed both Juror 37 and his spouse to refrain from discussing the case with anyone, including each other.  (Trial Transcript, Vol. I at 129-130.)

"When a juror's impartiality is at issue, the relevant question is 'did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.'" United States v. Cornell, 162 Fed App'x 404, 418 (6th Cir. 2006), cert. denied, 127 S.Ct. 44 (2006)(quoting Dennis v. Mitchell, 354 F.3d 511, 520 (6th Cir. 2003)).  "'[O]nly where a juror has indicated a refusal to consider the testimony and displayed evidence of a closed mind concerning a defendant's

24

innocence can [the Sixth Circuit] say that the district court has abused its discretion in refusing to strike a juror for cause.'" Id. (quoting United States v. Smith, 748 F.2d 1091, 1095 (6th Cir.1984)).

There is no evidence that Juror 37 was biased against Washam.  In fact, Juror 37 indicated to the Court in the original voir dire that his wife knew Carol Jones, County Clerk of Wayne County.  Juror 37 also indicated that the fact that his wife knew her would not affect him in any way.  (Trial Transcript, Vol. I at 52-53.)  Furthermore, the Court instructed the juror to have no discussions with anyone about the case, including his wife.  "[J]uries are presumed to understand and follow directions from the court." United States v. Carter, 236 F.3d 777, 787 (6th Cir. 2001). Washam has made no showing of error regarding this issue.

### L.  Jury Instructions

### 1. Cross-racial Identification

Washam claims that the trial court failed to give proper instructions on cross-racial identification. "A district court's refusal to deliver a requested jury instruction amounts to reversible error only if the instruction (1) is a correct statement of the law; (2) was not substantially covered by the charge actually delivered to the jury[;] and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." United States v. Jackson, 347 F.3d 598, 606 (6th Cir. 2003)(citing United States v. Gibbs, 182 F.3d 408, 432 (6th Cir.1999)).

"Identification instructions are within the discretion of the trial court; they need only be given if there is a danger of misidentification due to a lack of corroborating evidence."

25

Jackson, 347 F.3d at 607 (citing United States v. Boyd, 620 F.2d 129, 131-32 (6th Cir.1980)). Washam's identification was not uncorroborated. Three eyewitnesses identified him as the robber, and evidence was presented indicating that he owned a vehicle matching the description of the vehicle used in the April 24th robbery. Additionally, defense counsel discussed at length the accuracy and reliability of the identification testimony offered by the government. In fact, defense counsel was permitted to call an expert witness regarding the reliability of witness identification. For these reasons, the Court concludes that its refusal to provide the jury with Washam's proposed cross-racial identification instruction did not substantially impair his defense; and therefore, a new trial is not warranted.

### 2. Verdict Form

Washam argues that the Court failed to properly instruct the jury at closing because the jury returned a verdict of guilty on all counts of the Indictment. Washam claims that since the jury was instructed to pick either bank robbery or armed bank robbery, not both, the Court should not have released the panel. A review of the record reveals that the jury found the Defendant guilty of armed bank robbery and then subsequently found him guilty of the lesser included offense of bank robbery. These verdicts are not inconsistent and do not warrant a new trial.

### M. Sufficiency of Evidence – Firearm

Washam argues that there is nothing in the record in this case from which a jury could conclude beyond a reasonable doubt that he ever moved, supported, brandished, or transported a weapon during and in relation to the bank robbery. The Court disagrees. In

order to convict the Defendant of armed bank robbery, the jury was required to find beyond a reasonable doubt that the defendant "assaulted another by use of a dangerous weapon while taking the money." The bank employees who identified Defendant from the March and April 2003 bank robberies testified that the Defendant used a gun in the commission of the crime. In light of the witnesses testimony, the Court finds that the jury verdict was not contrary to the weight of the evidence and a new trial will not be granted on this basis.

### N.  Judicial Recusal

Washam argues that the undersigned has displayed bias and personal prejudice toward the Defendant necessitating recusal, a new trial, and dismissal with prejudice. The Court has previously addressed Washam's motion for recusal.   For the reasons set forth in the Court's Memorandum Opinion and Order dated April 17, 2007, the Court finds that Defendant's allegations do not support recusal, a new trial or dismissal with prejudice.

## IV.  CONCLUSION

After considering the credibility of the witnesses, the weight of the evidence, and for the reasons set forth above, **IT IS HEREBY ORDERED** that the motions by Defendant for a new trial [DN 189, DN 262] are **denied**.

cc: counsel of record
    Richard Washam, *pro se*

27